UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,


             -against-

                                        **13 Cr. 143 (JMF)**


JESUS MENA,

                        Defendant.
----------------------------------------X




**MEMORANDUM OF LAW IN SUPPORT OF**
**JESUS MENA PRE-TRIAL MOTIONS**




                         David Touger
                         Peluso & Touger, LLP
                         Attorneys for Defendant
                         JESUS MENA
                         70 Lafayette Street
                         New York, New York 10013
                         (212) 608-1234

**Preliminary Statement**

This memorandum is submitted in support of defendant, Jesus Mena's motions for Bill of Particulars, Discovery and to make further motions.

**ARGUMENT**

**POINT I**

**DEFENDANT'S MOTION FOR A BILL OF PARTICULARS
AND FOR DISCOVERY SHOULD BE GRANTED**

**A.
Bill of Particulars**

The function of a bill of particulars is to provide a defendant with details of the charge against him necessary for the preparation of his defense and to prevent prejudicial surprise at trial. See, United States v. Glaze, 313 F.2d 757 (2d Cir. 1963); United States v. Feola, 651 F. Supp. 1068 (S.D.N.Y. 1987); United States v. Nakashian, 635 F. Supp. 761 (S.D.N.Y. 1986); United States v. Greater Syracuse Board of Realtors, 438 F. Supp. 376 (S.D.N.Y. 1977); United States v. Harbin, 601 F.2d 773 (5th Cir 1979), cert. denied, 44 U.S. 954 (1979). Here, the Government has supplied the defense with only the bare minimum of information. The defendant does not even know what overt acts he committed that proves he is a member of the conspiracy or acted to further it along. Furthermore, the indictment is devoid of information as to what if anything the defendant did. These simple details must be provided to the defense.

It is anticipated that the Government will respond by arguing

that, a bill of particulars is not a general investigatory tool for the defense. See, United States v. Salazar, 485 F.2d 1272,1 277-78 (2d Cir. 1973). Nor is it a device to compel disclosure of the Government's evidence or its legal theory prior to trial. United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974); see also United States v. Fennell, 496 F.Supp.2d 279, 284 (S.D.N.Y.2007). This argument while true in fact is inapplicable to the case at bar.

Case law has clearly held, that, the sole purpose of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to (i) enable him to prepare his defense, (ii) avoid unfair surprise at trial, and (iii) preclude a second prosecution for the same offense. See, Wong Tai v. United States, 273 U.S. 77, 80-82 (1927); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1991). Indeed, "a bill of particulars should be required only where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Torres, 901 F.2d at 234; accord United States v. Chen, 378 F.3d 151,163 (2d Cir. 2004). Ultimately, "[i]n deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" United

States v. Triana-Mateus, 98 Cr. 958, 2002 U.S. Dist. LEXIS 6632, *15-16 (S.D.N.Y. Apr. 15, 2002) (citation omitted); see also United States v. Mitlof, 165 F. Supp.2d 558, 569 (S.D.N.Y. 2001). Here, the information sought by the defense in his Bill of particulars is will within the parameters of the above case law. The information is not just helpful it is completely and inarguably necessary.

The Government has charged Mr. Mena with being a member of a narcotics conspiracy yet it has not outlined one single overt act he is alleged to have committed, furnished counsel with any physical evidence that proves his involvement in the charged conspiracy and/or provided any statements by the defendant admitting his involvement in the conspiracy. It is impossible to prepare a defense to these charges without this bare minimum of information. Without the requested information the ensuing trial will only be a trial by ambush and the defendant will not be able to prepare any credible defense because he will not know what to defend against. Doesn't a defendant have at least the right to know on or about what date he is alleged to have committed an overt act in furtherance of the conspiracy. Without such information how can one even know if he has an alibi defense or not.

While the granting of the motion is discretionary with the trial court, (United States v. Panza, 750 F.2d 1141 (2d Cir. 1984);

United States v. Feola, supra; United States v. Andrews, 381 F.2d
377 (2d Cir. 1967), cert. denied, 390 U.S. 960 (1968)) as the
courts have long recognized, the 1966 Amendment to Rule 7(f), Fed.
R. Crim. P., in doing away with the "for cause" limitation, was
designed to encourage a more liberal attitude toward the granting
of bills of particulars. See, United States v. Thevis, 474 F. Supp
117, 124 (N.D. Ga. 1979). cert. denied, 459 U.S. 825 (1982).
("This amendment requires that the defendant be given the benefit
of the doubt in gray areas.") Here, the Government's failure to
inform the defendant of even the bare minimum of details relative
to the alleged offense necessitates the granting of the defendant's
request for a bill of particulars with out it not only will the
defendant be unable to adequate prepare for trial within the time
frame outlined by the Court but will be unable to file any further
meaningful pre-trial motions.   Thus, prejudicing his ability to
adequately defend himself against the charges filed against him.

It is within these general parameters that the defendant
Mena's requests should be considered.   To illustrate, Mena seeks
information relative to what exact overt acts he is alleged to have
committed, how many acts there were and the approximate date of the
acts.   The indictment does not any of the facts. It would be a
miscarriage of justice for a defendant to have to defend himself at
trial against charges which could place him in jail for a

considerable amount of time without any advance warning of what it is alleged that he did. The defendant is merely requesting such basic information such as when, where, and in what manner the defendant participated in the charged narcotics conspiracy. The Government has not furnished this and many more valuable pieces of information. They have failed to meet their burden.

The Courts have uniformly ordered the Government to disclose even more information then the basic facts of the case including but not limited to the names of the co-conspirators known to the Government. See, e.g., United States v. Thomas Mickens, 88 Cr. 309 (S-2) (TCP); United States v. Mannino, 480 F. Supp. 1182 (S.D.N.Y. 1079); United States v. Orsini, 406 F. Supp. 1264 (S.D.N.Y. 1974) (names of all co-conspirators); United States v. Corrado, 307 F. Supp. 513, 516 (S.D.N.Y. 1969); United States v. Orsini, supra (when, where and in what manner each defendant became a member of the alleged conspiracy); United States v. Lopez, 26 F.R.D. 174 (S.D.N.Y. 1960) (date when defendant entered conspiracy); United States v. King, 49 F.R.D. 51, 53 (S.D.N.Y. 1970) ("the Government is directed to furnish the names of any co-conspirators who became known to it prior to trial.")

> Specific items which have been held to be
> properly disclosed by the Government by way of
> a bill of particulars include: the names of
> all persons the Government will claim to have
> been co-conspirators; ... the locations of

7

acts set forth in the counts, to the extent performed by principals; and the place when the principal offense charged allegedly occurred. United States v. Feola, 651 F. Supp. at 113.

In order to decide whether a bill of particulars should be furnished, the Court must determine whether the Government has provided in some other form the information sought by the defendant. Id. The Feola Court held that while the Government had already provided a substantial amount of the requested materials, it nevertheless had to provide additional information that was determined by the Court to be crucial to the preparation of the defense. Id. None of the charges in the indictment, nor any other information provided thus far by the Government in the instant action furnish the specifics that are essential for the preparation and planning of the defense. The defendant at this point does not know what he was alleged to have done, when he was alleged to have done it or who he has alleged to have acted with. As is, the indictment is a masterpiece of generality and abstraction.

Unless provided with the information sought in the defendant's demand, he will be left, in effect, without the means to investigate further into the facts of this case and refute by extrinsic and independent witnesses the falsity of the indictment's charges. The fact that affording the defendant such protection may in some cases require some disclosure of the Government's evidence

8

is not a bar to the relief where the particulars demanded are necessary to the preparation of the defense.  United States v. Kessler, 43 F. Supp. 408, 412(E.D.N.Y. 1942); United States v. Bentvana, supra; and United States v, Smith, 16 F.R.D. 372, 375 (W.D. Mo. 1954).

Our request for Discovery is "a fair-minded pursuit of the truth."  See, United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988), United States v. Glaze, supra.  Indeed, in Glaze, 313 F.2d at 761, the Second Circuit commented that:

> We have observed that the Government, on occasion, objects to granting particulars even though no disadvantage to it can be ascertained.  In so doing, it follows a policy which has gradually fallen into disfavor in our courts of criminal justice -- in that it should reveal but the bare minimum of the elements of the offense charged so as to satisfy in the most cursory manner the requirement that the defendants be apprised of enough information to aid him in the preparation of his defense.

We submit that Mena is entitled to the requested particulars under the facts of this case and under the prevailing rules and case law.

### B.

### DEFENDANT'S MOTION FOR DISCOVERY SHOULD BE GRANTED

As of this date the Discovery that has been furnished relative

to Mr. Mena includes the indictment.  Defendant's motion for discovery, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure is made to insure that the defendant be furnished with the entire Discovery that he is entitled to.  We respectfully request the Court to order production of the materials sought so that this case may proceed expeditiously.  Otherwise, our ability to make all appropriate pre-trial motions, prepare for trial, and render the effective assistance of counsel guaranteed to defendant by the Sixth Amendment will be significantly impeded.

The Supreme Court has emphasized the liberal policy of discovery now underlying the Federal Rules of Criminal Procedure, especially as amended in 1966 and 1975.  The Court has stated

> [There is a] growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.... It is also reflected in the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous of the civil practice.  Dennis v. United States, 384 U.S. 855, 870-871 (1966).

The Supreme Court Advisory Committee's Note to amended Rule 16 in 1966 makes clear that the amendment was intended to enlarge greatly the availability of pre-trial discovery to the defense:

> The extent to which pre-trial discovery should be permitted in criminal cases is a complex and controversial issue.  The problems have been explored in detail in recent legal literature, most of which has been in favor of

> increasing the range of permissible discovery.... The rule has been revised to expand the scope of pre-trial discovery.

See, generally, 8 J. Moore, Federal Practice § 16.03; Rezneck, The New Federal Rules of Criminal Procedure, 54 Geo. L.J. 1276 (1966); Proceedings of the Judicial Conference of the Third Circuit, 42 F.R.D. 437, 576-79 (1966); Proceedings of the Judicial Conference of the Second Circuit, Symposium-Discovery in Criminal Cases, 44 F.R.D. 481 (1968).

In 1974, the Supreme Court proposed further revisions in Rule 16 to provide even greater discovery. The Advisory Committee expressed the view that:

> Broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence. 62 F.R.D. 271, 307-08 (1974).

The Congress accepted this enlarged discovery policy in 1975 when it enacted present Rule 16. Act of Congress in 1975, Pub. L. No. 94-64, 94th Cong., 1st Sess.

**B.**

**Brady Material**

In addition to Rule 16, the doctrine of Brady v. Maryland, supra, imposes further discovery obligations on the prosecution

11

under the Due Process Clause.  The Courts have been vigilant to assure implementation of the Brady doctrine, especially before trial when discovery counts most.  See, e.g., Hamric v. Bailey, 386 F.2d 390, 392-93 (4th Cir. 1967).  In Hamric, the Court held that "disclosure to be effective must be made at a time when the disclosure would be of value to the accused."  386 F.2d at 393; cf. United States v. Gleason, 265 F. Supp. 880, 885 (S.D.N.Y. 1967); United States v. Ahmed, 53 F.R.D. 186, 193-94 (M.D. Pa. 1971).  If the Government is not held to its Brady obligation, further proceedings may be rendered nugatory.

We have been extremely specific in our requests, as specific as we can be in view of the fact that we have not had access to the materials, in order to comply with the dictates of Brady and Agurs. The prosecution should now be ordered to disclose the requested Brady material in order to safeguard the defendant's due process rights as well as to insure that he will be afforded a fair trial. United States v. Bagley, 105 S.Ct. 3375 (1985).  The Bagley Court recognized that nondisclosure of specifically requested evidence could be particularly misleading to defense counsel in may respects.  It was conceded by even the Government in Bagley that reliance on a misleading representation could cause the defense to change or alter its trial strategies, defenses, or lines of independent investigation.  The court stated:

12

> We agree that the prosecutor's failure to respond fully to a <u>Brady</u> request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of that assumption. <u>Id.</u> at 3384

Refusal to produce the specifically requested and properly sought <u>Brady</u> material runs contrary to the goal of this "Government office whose aim should be to achieve justice rather than merely obtain convictions". <u>United States v. Fried</u>, 486 F.2d 201, 203 (2d Cir. 1973).

While it is true that a new trial may be ordered by the reviewing court if it can be shown that the non-disclosed evidence could have brought a different result, the defendant should not be forced to endure an entire trial before an analysis of the Government's failure to respond can be made.

It is further settled that the Court has inherent power to enter discovery orders going even beyond the specific terms of Rule 16. The Advisory Committee has stated:

> The rule is intended to prescribe the <u>minimum amount of discovery to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases.</u>  62 F.R.D. at 308 (emphasis supplied).

Each of the defendant's requests for discovery is within the broad discovery now available in criminal cases under Rule 16, Brady v. Maryland, supra, the other authorities we cite, and the inherent powers of the Court to manage the case to achieve an efficient and expeditious trial.

All of our discovery requests are for materials within the possession, custody, or control of the Government, which of course includes attorneys for the Government, other Government agents of the Federal Bureau of Investigation and any other Government agents and employees participating in the present case.  It has been held repeatedly that the Government's discovery obligations do extend to materials in the possession, custody or control of all its agencies and agents.  See, e.g., United States v. Beasley, 576 F.2d 626, 632 (5th Cir. 1978); United States v. Bryand, 439 F.2d 642, 650 (D.C. Cir. 1971); United States v. James, 495 F.2d 434, 436 (5th Cir. 1974), cert. denied, 419 U.S. 899; United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973).

**(i)**

**Request Regarding Leniency Agreements**

It is clear from the complaint in this matter that the Government has utilized information garnered from at least one if not more confidential informants or other types of cooperating individuals in the investigation of this matter.  The Second

Circuit has continually reaffirmed the importance of not allowing the prosecution to use cooperation agreements in order to improperly bolster the testimony of its witnesses. United States v. Fernandez, 829 F.2d 363 (2d Cir. 1987). In order to determine whether any misuse of such agreements has taken place, the defendant must be given access to information about it.

The prosecutor has not provided any information relating to promises, inducements, threats and other means of inducing cooperation of its witnesses, and all types of understandings and arrangements between such witnesses and the Government. All this information is clearly producible under Rule 16, Brady v. Maryland, supra, and Giglio v. United States, 405 U.S. 150 (1972). It has been frequently held that the defense is entitled to discovery of any matters bearing on promises or suggestions of immunity, leniency, preferential treatment, or other inducements to prospective Government witnesses; threats, express or implied; or agreements or undertakings with such witnesses. See, e.g., United States v. Mc Grane, 547 F.2d 404 (2d Cir. 1976); United States v. Sutton, 542 F.2d 1239 (4th Cir. 1976); Boone v. Paderick, 541 F.2d 447 (4th Cir. 1976); United States v. Acosta, 386 F. Supp. 1972 (S.D. Fla. 1974); Untied States v. Guerta, 53 F.R.D. 26, 27 (E.D. Wisc. 1971). Such material, of course, is highly relevant to Mr. Rubin because of its impeachment value.

15

If the Government is using individuals who are cooperating with the Government various offers and counter offers were obviously made by both the Government and the witness. The defendant is entitled to know the scope of the entire negotiations whether it involved the witness' criminal exposure (promise he would not be indicted on other matters either related or unrelated to the present matter), offers relating to re-location preferable prison assignment, money or subsistence provided, health plans, etc.  We submit that every draft of cooperation agreements and letters from the defendant or his counsel prior to that individual's cooperation is mandated.

**(ii)**

### Request Regarding Documents And Other Information Bearing On Credibility Of Government Witnesses

Production of this material is clearly required by the Supreme Court decisions in Brady and Giglio v. United States, supra.  As has been stated:

> [W]hen reliability of a witness may be determinative of guilt or innocence, non-disclosure of evidence that affects credibility is a denial of fundamental fairness required by the Due Process Clause of the Fifth Amendment. United States v. Sutton, 542 F.2d 1239, 1241-42 (4th Cir. 1976).

As an example the defendant has requested copies of the arrest and conviction record of any of the Government's witnesses.  It can

be assumed that many of the Government's witnesses are going to be individuals involved in the narcotics trade and individuals of that nature tend to have prior convictions.  This information is clearly highly relevant.

### (iii)

### Request For Specific Items Of
### Exculpatory Information

Each subsection calls for items required to be produced under Brady as potentially favorable to the defense.  Many of them are also called for under other items of the Request, and their materiality to the defense has already been demonstrated.  In addition, we seek materials as to any evidence or information relative to the defendant, including recordings relating or referring to him or in any other form, such as interview notices and rough draft notes of investigative reports that are no longer in existence, and an explanation why.  See, United States v. Butts, 535 F. Supp. 608 (E.D. Pa. 1982).  This is in accord with the Second Circuit decision in United States v. Bufalino, supra, in which the Court stated:

> [There is a] regretably sizable class of prosecutions in which the defense might have been hampered by the Government's failure to live up to statutory obligations with respect to preservation of evidence.... We will look with an exceedingly jaundiced eye upon future efforts to justify non-production of a Rule 16 or Jencks Act 'statement' by reference to

> 'department policy' or 'established practice'
> or anything of the like.  There is no longer
> any excuse for official  ignorance regarding
> the mandate of the law.  576 F.2d at 449-50.

See, United States v. Paoli, 603 F.2d 1029, 1036-37 (2d Cir. 1979).

### (iv)

### Request For A List Of Persons
### Interviewed In Connection With The Mena Case

Case law has clearly established the authority of the courts to order disclosure of persons interviewed.  See also, United States v. Greater Syracuse Board of Realtors, 438 F. Supp. 376, 381 (N.D.N.Y.  1977).  Persons interviewed by the Government  -- especially if they are not to be called as witnesses by the prosecution -- are likely to be a prolific source of exculpatory information under Brady v. Maryland. There is an independent duty on the prosecution under Brady to disclose the identity of persons having such information, over and above Rule 16 and the inherent authority of the Court.

Likewise, in United States v. Laurins, 660 F. Supp. 1579 (N.D. Cal. 1987), the District Court held that, while the discovery rules may not so require, due process and Brady v. Maryland, 373 U.S. 83 (1963), required the disclosure of the names and addresses of witnesses to the crimes charged in the indictment whom the Government did not intend to call as witnesses at trial.  660 F. Supp. at 1584.

**(v)**

### Request For Witness Statements
### And Interview Reports And Notes

This request builds on the previous request and seeks statements and interview reports and notes with respect to the witnesses who will be called at trial and those who will not be.

With respect to statements of witnesses to be called at trial, the Jencks Act, 18 U.S.C. § 3500, certainly does not prevent the prosecution from making disclosure of these materials well in advance of trial. See, United States v. Percevault, 490 F.2d 126, 132 (2d Cir. 1974). The Court there noted that:

> [I]n most criminal cases, pretrial disclosure will redound to the benefit of all parties, counsel, and the court. Indeed, sound trial management would seem to dictate that Jencks Act material should be transmitted prior to trial, especially in complex cases, so that those abhorrent lengthy pauses at trial to examine documents can be avoided. Id.
> (Emphasis supplied)

The statements of trial witnesses should be turned over as soon as possible so that counsel can adequately prepare for trial and make any and all pre-trial motions including motions in limine in advance of the April 21, 2014 trial date.

The Court's inherent powers to insure due process and to avoid continuances at the trial require that the Government be directed to furnish these materials.

19

Moreover, statements of Government witnesses to be called at trial and presumptively covered by the Jencks Act have been discoverable in advance of trial.  See, United States v. Narcisco, 446 F. Supp. 252, 270-71 (E.D. Mich. 1977).  The court reasoned that the due process clause and the right to effective assistance of counsel required the production of such materials sufficiently in advance of trial to allow an opportunity for meaningful defense preparation.  446 F. Supp. at 270-71; cf. United States v. Moceri, 359 F. Supp. 431, 439 (N.D. Ohio 1973).

In any event, the Jencks Act does not in any way preclude the discovery of the materials concerning witnesses whom the prosecution does not plan to call at trial.  Statements of such witnesses and notes of their interviews may well contain material helpful to the defendant's case that the prosecution has an independent, constitutional duty to disclose under Brady v. Maryland, supra.  See, United States v. Kaplan, 554 F.2d 557, 580 (3d Cir. 11977); United States v. Ladd, 48 F.R.D. 266 (D. Alaska 1969); cf. United States v. Gleason, 265 F. Supp. 880, 884, 887 (S.D.N.Y. 1967).

A number of courts have therefore ordered discovery of such materials pertaining to persons whom the Government does not plan to call at trial.  See, e.g., United States v. Narcisco, supra, 446 F. Supp. at 367; United States v. Leichtfull, supra, 331 F. Supp.

at 735; cf. United States v. Turkish, supra, 458 F. Supp. at 882.

**(vi)**

**Request For Evidence of "Other Crimes",
Including Any Prior Or Subsequent Mis-
conduct Or Bad Act Or Crimes, As To The
Defendant And Any Co-Conspirators**

Defendant has no knowledge of the identity of Grand Jury witnesses who testified against him. Likewise, he has no knowledge of witnesses who were interviewed in connection with this continuing investigation.

The defendant is in a position where he has no knowledge of who he may be facing at trial, whose statements he would be entitled to rebut under Rule 806 and of what conduct he may have to defend against. Cf. United States v. LeRoy, 687 F.2d 610, 618-19 (2d Cir. 1982), cert. denied, 459 U.S. 1174, 103 S.Ct. 823. Furthermore, the defendant is entitled to be furnished with a list of any prior acts that the Government wishes to introduce under Rule 404(b) of the Federal Rules of Evidence. Consequently, the materials sought in this request are within the scope of Brady as well as Rules 403, 404 and 609 of the Federal Rules of Evidence.

**(vii)**

**Request For All Hearsay Statements
And Statements Admissible Under Rule
801(d)(2)(C), (D), Or (E), Federal Rules
Of Evidence, Together With All Impeachment
Materials Of The Declarants Of Those Statements**

Rule 806, Fed. R. Evid., provides as follows:

> When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D) or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness the party is entitled to examine him on the statement as if under cross-examination.

The Advisory Committee's note to Rule 806 begins with the plain rationale behind the Rule: "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment...." See also, United States v. Check, 582 F.2d 668, 684 n. 44 (2d Cir. 1978).

The applicability of Rule 806 was commented upon in United States v. Lechoco, 542 F.2d 84 (D.C. Cir. 1976). In Lechoco, the defendant proffered an insanity defense through three psychiatrists who had interviewed him prior to trial. The defendant, however, did not take the stand. Nonetheless, the hearsay exception of Fed. R. Evid. Rule 803(4), "Statements for Purposes of Medical Diagnosis or Treatment", permitted defense counsel to elicit, during the

testimony of the doctors, what had been told to them by the defendant.   Naturally, and quite properly, the prosecution attempted to discredit the psychiatric defense by discrediting the truthfulness of the defendant's statements to the doctors.   The Court in Lechoco approved that procedure (542 F.2d at 89 n.6):

> The defendant's statements to his psychiatrist fall within the statement to a physician exception to the hearsay rule embodied in Rule 803(4).   As such, Mr. Lechoco's credibility was open to attack under Rule 806.   The prosecutor's vigorous cross-examination represents the type of attack on credibility contemplated by the term "otherwise" as contained in Rule 608(a).

Similarly, in United States v. Driscoll, 445 F. Supp. 864 (D.N.J. 1978), where the Government faced the prospect that apparently exculpatory grand jury testimony of co-conspirator Tecott, who died before indictment, would be used by the defense, the court observed that, under Rule 806 (445 F. Supp. at 867):

> Since one or another part of the Tecott testimony may tend to exculpate himself, or otherwise may raise a doubt on some part of the evidence for the United States, Tecott's credibility may be open to attack....

Therefore, the defendant intends to exercise his right to impeach the credibility of the declarants of any and all out-of-court statements, the Government should be required to disclose any hearsay statements or statements admissible under Rule 801(d)(2), (C), (D), or (E).

23

Moreover, if the Government will seek to offer proof against the defendant by introducing the declarations of non-witnesses, the defendant must be permitted to impeach those declarants as if they were witnesses at trial. In order to make that right to impeachment meaningful, the Government is obliged, under the rule of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, to disclose any impeachment material relevant to such unavailable declarants; that would include, as well, material which incidentally might also be 3500 material.

The "Jencks Act" is not a bar since it only bans the early production of "statements" and, further, such statements must be ones "made by a Government witness or prospective Government witness." 18 U.S.C. § 3500(a). There is little need, after all, to protect a "witness" who will not be called to the stand to testify. Once the hearsay declaration has been introduced, both the spirit of the Jencks Act and regard for proper "standards for the administration of justice in the federal courts" [(Jencks v. United States, 353 U.S. 675, 668 (1957)] would compel immediate production of all prior and subsequent statements made by the declarant touching the subject matter of the declaration. In the case of non-witness declarants, there is simply no reason for delaying production until the last minute.

Indeed, it has been consistently recognized that the

24

curtailment of cross-examination of Government informant witnesses must be sparingly exercised.  As stated in United States v. Blackwood, 456 F.2d 526 (2d Cir. 1972), cert. denied, 409 U.S. 863 (1972):

> a defendant's major weapon when faced with inculpatory testimony of an accusing witness often is to discredit such testimony, proof of bias or motive to falsify.  Evidence of such matters is never collateral...for if believed it colors every bit of testimony given by the witness whose motives are bared.

See also, United States v. Bazzano, 570 F.2d 1120 (3d Cir. 1977), cert. denied, 436 U.S. 917 (1978) (defense permitted to vigorously cross-examine F.B.I. agent regarding his attempt to influence witnesses by reading grand jury testimony to them); United States v. Harris, 498 F.2d 1164 1166-70 (3d Cir.), cert. denied, 419 U.S. 1969 (1974) (noting that since Government informant was subject to extensive cross-examination regarding Government's promise to aid in state proceeding, defendant's conviction would not be reversed); United States v. Haggett, 438 F.2d 396 (2d Cir. 1971), cert. denied, 402 U.S. 946 (1971); United States v. Byrne, 451 F.Supp. 109, 112-113 (E.D. Pa. 1978) (in conspiracy, defendants had right to cross-examine Government informant to fully explore the extent of his agreement with the Government respecting his testimony). See generally, 3 Wigmore, Evidence, § 884 at 376-77 (3d ed. 1940); McCormick, Evidence, § 37 at 73-74 (2d ed. 1972).

Accordingly, "in fairness" (see citation from Advisory note above) the prosecution should be required to disclose the requested impeaching information.

### (viii)

### Request For the Production of Confidential Informants

The defendant does not know if confidential informants are going to be used against him at trial. Their identity is material to the defense.   Therefore, the Government should be required to disclose the identity of all of the CIs used in this investigation. It is well established that where the disclosure of an informer's identity is relevant and helpful to the defense of an accused, the informer's privilege must give way.  United States v. Rovario, 353 U.S. 53 (1957); see also, United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988) (defendant is entitled to disclosure where informant is eyewitness or participant in crime charged, whose testimony would be significant in determination of guilt or innocence); United States v. Roberts, 388 F.2d 646, 648-49 (2d Cir. 1968) (where informant was present at all significant events, he was a crucial witness, whose name and address Government was required to produce for defendants' interview on proper demand).

Here, the defendant has no knowledge if in fact the Government in this investigation has utilized a CI.   However, if in fact one

26

has and he or she is a participant in the alleged crimes charged or allegedly assisted the defendant in the alleged crimes in any manner he or she should be produced so that the defense may ask he or she to participate in an interview. The defense is entitled to at least seek access to the CI directly.  "As the Supreme Court noted in Rovario, "[the desirability of calling [the informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." Saa, 859 F.2d at 1074 (quoting United States v. Rovario, 353 U.S. at 64) (emphasis supplied in Saa).  Furthermore, the Court held that the Government's act of passing along the defendant's request to the informant, and informing the defendant in open court that the informant did not wish to be interviewed by the defense "was no substitute for permitting defense counsel to ask informants themselves." Id., 859 F.2d at 1074.  The Government does not have the right "to place a defendant at a tactical disadvantage by reserving to itself alone the ability to request an interview with a material witness." Id., quoting United States v. Fischel, 686 F.2d 1082, 1092 (5th Cir. 1982).  The Court went on to hold that if the trial court was persuaded that informant would be endangered by his exposure to the defendant, the Government should have been ordered to produce the informant for an in camera meeting with defense counsel and the Court. See also, United States v. Panton,

27

846 F.2d 1335, 1336-37 (11th Cir. 1988) (case remanded for an <u>in camera</u> interview with the informant).

Here, failure to allow the defendant an opportunity to interview the possible informants would obviously put him at a severe disadvantage and turn the trial from a fair search for the truth into a trial by ambush with the Government having a critical advantage.  This is because as of yet the Government has not furnished the defendant with one piece of physical evidence that connects him to the crime charged.  Not a photograph, telephone call, text message, video and/or anything else.  Thus, it is evident that the Government intends to prove their case with informants and the defendant has a right to interview or at the minimum ask the informants if they would consent to be interviewed by the defense.

**POINT II**

**THE DEFENDANT REQUESTS**
**LEAVE TO MAKE FURTHER MOTIONS**

The defendant, Mena requests leave of this Court to make such further motions as may seem appropriate at a future date

<u>CONCLUSION</u>

For all of the reasons set forth above, the requested relief should be granted in all respects.

Dated:  New York, New York
        March 13, 2014

Respectfully submitted,

PELUSO & TOUGER


By:
    DAVID TOUGER
    Attorney for Defendant
    JESUS MENA
    70 Lafayette Street
    New York, New York 10013
    (212) 608-1234