

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 18, 2014

**VIA ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    <u>United States</u> v. <u>Fadul-Garcia</u>, 13 Cr. 143 (JMF)

Dear Judge Furman:

    We write, consistent with the Court's direction, to identify the witnesses the Government intends to call at the attenuation hearing scheduled in this matter for July 21, 2014 (the "Hearing"). At present, the Government intends to call the following witnesses:

        Special Agent Nelson Crespo, Bureau of Alcohol, Tobacco, Firearms and
            Explosives
        Special Agent Chris Barnes, U.S. Secret Service
        Officer John Ruttenberg, Essex, Vermont Police Department

    Moreover, and in light of the Court's July 17, 2014 Order regarding the Hearing, we write to clarify that the Government no longer seeks to introduce at trial (1) "phone records obtained pursuant to subpoenas and documenting phone contacts between" members of the charged drug conspiracy; or (2) "text messages and other records obtained from a phone recovered from Defendant Brian Garcia at the time of his arrest in an unrelated state case."

    Finally, and in anticipation of some of the legal and factual issues we expect to be raised at the Hearing, we write to briefly address *Murray* v. *United States*, 487 U.S. 533 (1988) and, in particular, its finding that the "independent source" doctrine would not apply to evidence gathered pursuant to a search warrant if the "decision to seek the warrant was prompted by what [the agents] had seen during the initial [unlawful] entry." *Id.* at 542. Specifically, the Government respectfully submits that there is a clear line of demarcation in the well-settled authority of the Second Circuit and other circuits between (i) evidence collected after an illegal search or seizure focused or directed agents towards that *evidence* (which generally is tainted and must be suppressed per *Murray*), and (ii) evidence otherwise lawfully discovered after an illegal search or seizure merely focused or directed agents towards a particular *individual* as a target of investigation (which is not tainted and should not be suppressed). This distinction is firmly

supported by the case law discussed below, which the Second Circuit and other courts have recognized draws the appropriate balance between preventing law enforcement from exploiting an illegal search to collect and use specifically tainted evidence, on the one hand, and effectively conferring immunity on a defendant by requiring suppression even of evidence that was lawfully collected or discovered after an illegal search served to identify the defendant as a target of investigation, on the other hand.  The Government expects that the Hearing testimony will establish that the evidence at issue in this case falls into the latter category and, accordingly, should not be suppressed.

Since *Murray* was decided, courts have primarily applied it in cases presenting facts substantially similar to those at issue in *Murray* – that is, in cases where agents involved in an illegal search or seizure seek to "reseize" the same illegally discovered evidence either through a search warrant or other form of process.  *See, e.g.*, *United States* v. *Jadlowe*, 628 F.3d 1, 9 (1st Cir. 2010) (applying *Murray* to consideration of "whether evidence discovered in a lawful search pursuant to a warrant may be admissible in the aftermath of an unlawful entry"); *United States* v. *Johnson*, 994 F.2d 980, 987 (2d Cir. 1993) (applying *Murray* to similar facts and noting "[t]he Supreme Court in *Murray* . . . held that the [independent source] exception permits 'second-look' warrants when the 'later, lawful seizure is genuinely independent of the earlier, tainted one'") (quoting *Murray*, 487 U.S. at 542); *United States* v. *Price*, 558 F.3d 270 (3d Cir. 2009) ("The independent source doctrine serves as an exception to the exclusionary rule and permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.') (quoting *Murray*, 487 U.S. at 537)); *United States* v. *Walton*, 56 F.3d 551, 554-55 (4th Cir. 1995) (same); *United States* v. *Runyan*, 290 F.3d 223 (5th Cir. 2002) (same); *United States* v. *Markling*, 7 F.3d 1309, 1315-16 (7th Cir. 1993) (same); *United States* v. *Salas*, 879 F.2d 530 (9th Cir. 1989) (same).

By contrast, *Murray* has far less frequently been extended beyond its facts and, in particular, generally has *not* been read as disturbing the long-standing and well-settled principle that "the mere fact that information gained during an illegal search gives rise to a subsequent, separate investigation of an individual does not necessarily taint the later investigation." *United States* v. *Watson*, 950 F.2d 505, 507-08 (8th Cir. 1991) (collecting cases); *see also United States* v. *Carter*, 573 F.3d 418, 424 (7th Cir. 2009) ("[T]he fact that the [unlawful] search gave investigators a lead on a possible suspect does not make a subsequent identification of that suspect, given by a witness who had no knowledge of the illegal search and was not shown any of the evidence produced by it, subsequently inadmissible."); *United States v. Smith,* 155 F.3d 1051, 1061 (9th Cir.1998) ("[I]t is *not* sufficient in demonstrating taint that . . . an illegal search uncovers the alleged perpetrator's identity, and therefore 'directs attention to a particular suspect.") (emphasis in original).[1]

---

[1] To be clear, the Government is not seeking through the relatively brief treatment of *Murray* and its progeny in this submission to suggest that *Murray* should be or has been limited to its facts, or that only items that were *directly* discovered and viewed during an illegal search can be tainted by that search, as opposed to items to which law enforcement was *indirectly* led by the evidence that was discovered during the illegal search.  The Government is simply pointing

2

The Second Circuit's frequently cited opinion in *United States* v. *Friedland*, 441 F.2d 855, 859 (2d Cir. 1971) (Friendly, J.) is particularly illustrative of this principle. In *Friedland*, the defendant moved to suppress evidence gathered by federal agents as part of a securities fraud investigation on the ground that different agents had previously and illegally recorded conversations the defendant had been a party to. The Circuit rejected the argument, concluding that "we do not accept the premise that if [the agents targeting the defendant were] put on notice, through receipt of information obtained from illegal bugging, that [the defendant] was the sort of person who would bear watching, this alone would immunize him from investigation of different criminal activities and from prosecution on the basis of facts about them learned in a lawful way." *Id.* at 859. As Judge Friendly further explained, the alternative outcome – *i.e.*, a "grant [of] life-long immunity from investigation and prosecution simply because a violation of the Fourth Amendment first indicated to the police that a man was not the law-abiding citizen" – would "stretch the exclusionary rule beyond tolerable bounds." *Id.* at 861.

*Friedland* and the principles set forth above have survived *Murray*, and courts have routinely cited *Friedland* for these propositions in the context of rejecting suppression motions since *Murray* was decided. *See, e.g.*, *United States* v. *Fofana*, 666 F.3d 985, 991 (6th Cir. 2012); *United States* v. *Carter*, 573 F.3d 418, 424 (7th Cir. 2009) ("Few cases, if any, applying the attenuation exception hold that evidence separately uncovered through completely lawful means is inadmissible because an illegal search first made a particular person a suspect in a criminal investigation."); *United States* v. *Liss*, 103 F.3d 617, 621 (7th Cir. 1997); *United States* v. *Watson*, 950 F.2d at 508 ("[W]e conclude that where a law enforcement officer merely recommends investigation of a particular individual based on suspicions arising serendipitously from an illegal search, the causal connection is sufficiently attenuated so as to purge the later investigation of any taint from the original illegality."); *United States* v. *Apple*, 915 F.2d 899, 910 (4th Cir. 1990) ("Evidence sufficiently attenuated from allegedly illegal surveillance may also be admissible, even if the government had first been put on notice that the [defendants] might be involved in criminal activity by the illegal surveillance."); *United States* v. *Ortiz-Gonzalbo*, 946 F. Supp. 287, 289 (S.D.N.Y. 1996) (MBM); *United States* v. *Hoang Anh Thi Duong*, 156 F. Supp. 2d 564, 576 (E.D. Va. 2001) ("[I]t is not enough to show that unlawfully seized information gives an impetus or direction toward what is to be focused on by the government. Rather, the nexus must be so direct that the application of the exclusionary rule would have a real deterrent effect on the behavior of law enforcement officers . . ." and noting, in particular, that "the seizure of these documents *predated and was wholly unrelated* to the" unlawful search) (emphasis added).

Indeed, these applications of *Friedland* and the principles set forth above are all entirely consistent with *Murray* which itself recognized that that "the independent source doctrine [rests] . . . upon the policy that, while the government should not profit from its illegal activity, neither

---

out that there is a recognized, categorical difference between the treatment of evidence collected because an illegal search has pointed agents to that *evidence* – whether directly or indirectly (the scope of either term being unnecessary to resolve here) – and the treatment of evidence collected because an illegal search merely identified an *individual* for further investigation.

3

should it be placed in a worse position than it would otherwise have occupied." *Id.* 487 U.S. at 542; *United States* v. *Fofana*, 666 F.3d at 988 (rejecting challenge to lawfully gathered evidence subsequent to illegal search because the "government cannot be made worse off because of misconduct than it would have been if the misconduct had not occurred") (internal quotations omitted).

      Consistent with the above, the Government expects to establish at the attenuation hearing that the unlawful search in this case conducted by New York City officers did no more than put federal agents "on notice . . .that [the defendant] was the sort of person who would bear watching." *Friedland*, 441 F.2d at 859.  In particular, that search alerted federal agents to the defendants' identities, information which the agents then used to run the defendants' rap sheets and thereby learn of a connection to Vermont and, ultimately, a Vermont-based investigation that had already gathered evidence and identified many of the individuals the Government now intends to call as cooperating witnesses at trial.  The evidence at issue at the Hearing thus constitutes "evidence separately uncovered through completely lawful means" which should not be deemed "inadmissible simply because an illegal search first made [the defendant] a suspect" of the federal investigation.  *Carter*, 573 F.3d at 424.[2]

                                            Respectfully,

                                            PREET BHARARA
                                            United States Attorney

                              By:   /s/_____
                                         Amy Garzon/Edward B. Diskant
                                         Assistant United States Attorneys
                                         Telephone:  (212) 637-2431/2294

cc:    Florian Miedel, Esq. (via electronic mail)
        Jonathan Marvinny, Esq. (via electronic mail)
        Daniel Parker, Esq. (via electronic mail)

---

[2] The Government notes that the foregoing renders it unnecessary to resolve the question of whether the evidence collected by the authorities in Vermont was discovered, for attenuation purposes, when it was collected by the Vermont authorities (largely before the illegal search) or, instead, when the present prosecution team became aware of its existence (after the illegal search).  Even if evidence collected by a law enforcement agency before the relevant illegality could ever be deemed a fruit of that illegality (and the Government contends it could not be), the evidence at issue here was not a fruit of that illegality because the current prosecution team was led to it by no more than the decision to investigate the defendants.